**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| TYRONE BOHANNA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 2:21-cv-02760-SHL-atc |
| | ) | |
| VINCENT VANTELL, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING PETITION PURSUANT TO 28 U.S.C. § 2254, DENYING A
CERTIFICATE OF APPEALABILITY, CERTIFYING THAT AN APPEAL
WOULD NOT BE TAKEN IN GOOD FAITH, AND DENYING LEAVE TO PROCEED
IN FORMA PAUPERIS ON APPEAL**

Before the Court is the Pro Se Petition Under 28 U.S.C. § 2254 for Writ of Habeas

Corpus by a Person in State Custody (ECF No. 1) ("§ 2254 Petition"), filed by Petitioner Tyrone

Bohanna on December 8, 2021.   Bohanna, Tennessee Department of Correction ("TDOC")

prisoner number 282514, is currently incarcerated at the Whiteville Correctional Facility

("WCF") in Whiteville, Tennessee.[1]   Respondent WCF Warden Vincent Vantell filed his

Answer to Petitioner's Petition for Writ of Habeas Corpus (ECF No. 14) on February 11, 2022.

For the reasons stated below, the Court **DENIES** the § 2254 Petition.

---

[1] See https://www.tn.gov/correction/agency-services/foil.html (click "Search Now"; then
"Search By TDOC ID"; then type "282514"; then click "Search").

## I.    BACKGROUND

### A.  State Court Procedural History

On March 11, 2010, a grand jury in Shelby County, Tennessee returned an indictment

charging Bohanna with especially aggravated robbery, attempted second degree murder,

employing a firearm during a felony, aggravated burglary, and aggravated assault.   (ECF No. 9-

1 at PageID 53–62.)   These charges stemmed from an incident on November 21, 2008, where

Bohanna and his co-defendant Brandon Harris entered a residence occupied by twin brothers

Antonio and Antoine Hawkins[2], Michael Reynolds, and Johnny Morgan, robbed the occupants,

and shot Antoine.   See State v. Bohanna, No. W2011-01273-CCA-R3-CD, 2013 WL 2393050,

at *1 (Tenn. Crim. App. May 29, 2013), perm app. denied, (Tenn. Nov. 14, 2023) ("Bohanna I").

Several court rulings, both before and during trial, are relevant here.   First, an

evidentiary issue arose out of Antonio's murder on June 18, 2010, before Bohanna's trial.[3]

Bohanna v. State, No. W2019-01200-CCA-R3-PC, 2021 WL 1698524, at *1, 16 (Tenn. Crim.

App. Jan. 27, 2021) ("Bohanna II").   The State sought to introduce Bohanna's jailhouse

telephone calls to show Bohanna's involvement in Antonio's murder and that Bohanna was

trying to influence the testimony of witnesses.   Bohanna I, 2013 WL 2393050, at *2.   The trial

court determined that Bohanna had no expectation of privacy for his calls, and then assessed

whether the calls must be excluded under Tennessee Rule of Evidence 404(b).   Id.   Some

relevant portions of the telephone calls were deemed admissible and Bohanna had the choice of

---

[2] To avoid confusion, the brothers are referred to by their first names.

[3] Assistant Attorney General Pamela Stark testified in the post-conviction proceedings
that she had substantial evidence that Antonio's death was "in part, motivated by the behavior"
of Bohanna and that Antonio was killed within twenty-four hours after Bohanna's trial was
continued.   Bohanna II, 2021 WL 1698524, at *14.

introducing additional portions of the calls for completeness.   Bohanna I, 2013 WL 2393050, at

*2; see also Bohanna II, 1698524, at *4 (discussing the calls).

The trial court also conducted a pretrial hearing to address whether the State could

introduce Antonio's pretrial hearsay statements under Tennessee Rule of Evidence 804(b)(6), the

forfeiture by wrongdoing exception to the hearsay rule.   See Bohanna I, 2013 WL 2393050, at

*2.   The evidence presented included a call on January 5, 2009, during which Bohanna appeared

to attempt to get a fellow inmate who knew the Hawkins brothers to convince the parties that

Bohanna had no involvement in the offenses.   See Bohanna II, 2021 WL 1698524, at *4.

During the conversation, Antonio said he saw Bohanna commit the offenses and refused to

change his statements.   Id.

Sergeant William Merritt testified that, on the night of his murder, Antonio was at the

Sleep Inn with Tawanna[4] Knight.   Bohanna I, 2013 WL 2393050, at *2.   Knight left the hotel

and went to a residence on Pope Street, and Antonio went to his home on Banbury Street, which

Johnny Morgan was renting.   Id.   After Antonio's murder that evening, Merritt was called to

the Banbury Street address to investigate.   (ECF No. 9-8 at PageID 672.)   A trail of blood from

the kitchen to the street was found that turned out to be the blood of Charles Townsend.   (Id. at

PageID 672–73.)

Knight was Demetrius Lay's girlfriend.   Bohanna II, 2021 WL 1698524, at *15.   She

told Merritt that Antonio was friends with Lay and asked Merritt to not reveal Knight's

relationship with Antonio.   Id. at *17.   Merritt later testified that he believed someone had been

arrested for Antonio's murder, but he did not know if Bohanna had been charged.   Id. at *4.

---

[4] On post-conviction appeal, Ms. Knight's name is spelled "Tajuana".   See Bohanna II,
2021 WL 1698524, at *4.

Adrian Wright[5], an inmate incarcerated with Bohanna before trial, testified at the hearing that Bohanna was "excited" and "happy" and shared "I'm good" when he found out about Antonio's murder.   Id. at *5.   After Wright asked how Antonio was killed, Bohanna replied, "You know who I am T.Y. Bohanna."   Id.   Wright testified that he interpreted the statement to mean that Bohanna "had Antonio Hawkins killed."   Id.

Antonio was killed within twenty-four hours after the court granted a continuance of Bohanna's trial.   Id. at *6.   After the State informed the court that Bohanna was being investigated in connection with Antonio's death, the trial was again continued.   Id.   Following a hearing, the court found that Bohanna "made efforts to keep [Antonio] from testifying" and "that during a telephone conversation, [Bohanna] encouraged [Antonio] to change his testimony."   Id. According to the trial court, Bohanna had, for years, been consistent and unwavering in his commitment to keep Antonio and other witnesses from testifying.   Id.   The court found that the State had established by clear and convincing evidence that the conversations between Bohanna and Wright took place.   Id.   In addition, the court allowed the State to admit Antonio's statements at trial, pursuant to the forfeiture by wrongdoing hearsay exception, and Antonio's testimony at the preliminary hearing under the hearsay exception for former testimony of an unavailable witness under Tennessee Rule of Evidence 804(b)(1).   Id.

A jury trial commenced in the Shelby County Criminal Court on February 1, 2011.   (See ECF No. 9-9 at PageID 702.)   During the proceedings, the trial court noticed that an African-American juror was falling asleep.   Bohanna I, 2013 WL 2393050, at *15.   Bohanna argued that four jurors were sleeping but the trial court disagreed.   Id.   No affidavits of other jurors

_____

[5] According to Bohanna, Wright was the uncle of Antonio's children.   Bohanna II, 2021 WL 1698524, at *14 at *18.

4

sleeping are in the record.   Id.

On February 7, 2011, the jury found Bohanna guilty of especially aggravated robbery, reckless endangerment (a lesser-include offense of attempted second degree murder), aggravated burglary, and three counts of aggravated assaulted.[6]   (ECF No. 9-21 at PageID 2560–61; see ECF No. 9-1 at PageID 95.)   The trial court sentenced Bohanna as a career offender to the maximum sentence for each offense and ordered consecutive sentences, resulting in an effective sentence of 120 years, eleven months, and twenty-nine days.   Bohanna I, 2013 WL 2393050, at *1.

Bohanna appealed, challenging (1) the sufficiency of the evidence; (2) the admission of evidence pursuant to the forfeiture by wrongdoing provision of Tennessee Rule of Evidence 804(b)(6); (3) the admission of Bohanna's jailhouse telephone calls; (4) the trial court's decision to hold court on Sunday; (5) the denial of Bohanna's motions for mistrial; (6) the admission of Donovan Hensley's testimony; and (7) the imposition of consecutive sentencing.   Id. at *1, 10. The Tennessee Court of Criminal Appeals ("TCCA") affirmed the trial court's judgments.   See id. at *1, 21.   The Tennessee Supreme Court ("TSC") denied permission to appeal.   (ECF No. 10-21.)

Petitioner filed a pro se motion to reopen post-conviction proceedings (see ECF No. 11-6 at PageID 4250–4316), which the post-conviction court treated as an initial petition seeking post-conviction relief.   See Bohanna II, 2021 WL 1698524, at *14.   On post-conviction appeal, Bohanna asserted that his trial counsel was ineffective in failing to adequately investigate: (1) Wright; (2) evidence linking Lay and Townsend to Antonio's death; and (3) the recordings of

---

[6] The jury found him not guilty of employing a firearm in the commission of a felony offense.   (ECF No. 9-21 at PageID 2561.)

Bohanna's jailhouse telephone calls.  Id. at *19.  Bohanna asserted that his trial counsel failed, post-trial, to challenge the severance of Bohanna's and Harris's trials and the State's failure to disclose evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963).  Bohanna II, 2021 WL 1698524, at *19.  The TCCA denied relief for Bohanna on all issues.  (ECF No. 11-36.)  On May 14, 2021, the TSC denied permission to appeal.  (ECF No. 11-39.)

**B.  Evidence at Trial**

The following evidence was presented at trial.  See Bohanna I, 2013 WL 2393050, at *2–18; see also Bohanna II, 2021 WL 1698524, at *6–14.

Reynolds testified that he was at Antonio and Antoine's home on November 21, 2008, at around 10:00 p.m.  Bohanna I, 2013 WL 2393050, at *2.  Reynolds was in the front room, while Antoine was studying in the back of the house.  Id.  Antonio and Morgan were also in the house.  Id.  Someone knocked on the door, and Reynolds looked out the window and saw two men.  Id.  Antonio recognized one of the men and let them in.  Id.  One of the men went to the back with Antonio, and the other man stayed in the front room with Reynolds.  Id.  Reynolds identified Harris as the first man through the door.  Id.  Reynolds saw a white Dodge Charger parked across the street when the two men came inside.  Id.

Morgan testified that the men who came to the house wanted to go to a club with Antonio.  Id. at *3.  Morgan identified one of the men as Harris.  Id.  Antonio went to the back of the house to tell Antoine that he was leaving, and Morgan followed.  Id.  Antoine confirmed that, around 9:30 or 10:00 p.m., Harris walked to the back room where he was studying, looked around, and walked back out.  Id.  The other man came to the back of the house brandishing a pistol and yelled "get down bitches.  Y'all know what this is."  Id.  Antonio ran, and the gunman followed him.  Id.

6

Harris pulled out a gun and started shooting at Antoine.   Id.   Harris then took Antoine's

money and hit him several times with the gun, telling him that he knew he had "more [money]

than this."   Id.   Harris started to walk away, then turned, and fired one more shot, hitting

Antoine in the arm.   Id.   Morgan said Harris walked up to Antoine and exclaimed, "[w]here is

that money at, bitch," before going through his pockets and taking his watch.   Id.

Reynolds testified that the man who stayed with him pulled out a pistol and told him to

get on the floor.   Id.   From there, Reynolds heard three or four gunshots coming from the back

of the house.   Id.   Reynolds said that the man with him then opened the front door and let a

third man into the house.   Id.   The third man grabbed Reynolds by the ankles and dragged him

to another room.   Id.   Reynolds heard someone he thought was Antonio try to open a door and

leave, but then heard one of the intruders tell him to "get back in there."   Id.   Similarly, Morgan

testified that, when Antonio tried to leave the back room, he returned quickly and told Morgan

that one of the men had a gun and told him to "get his bitch ass back in the room."   Id.

Moments later, Reynolds heard the intruders leave and heard a car.   Id.   After the car

was gone, he confirmed that they had been in the white Dodge Charger.   Id.   Antonio told

Morgan that he also saw a white Dodge Charger parked on the street and that Derek Dowdy was

driving.   Id.   Antonio tried to chase the car, but it was gone, so he returned to the house to see

about Antoine.   Id.

The police arrived quickly.   Id.   Morgan and Antonio gave statements at the police

station, and Morgan identified Harris.   Id.   Morgan testified that he was "unable to 100% pick

out" Bohanna from the lineup, but gave a description to the police.   Id.   However, he insisted at

trial that Bohanna was the second person involved, based on information from Antonio.   Id.

According to Morgan, Bohanna called Antonio multiple times to convince him that he was not

involved.   Id.   Morgan also claimed that Bohanna's "people" came by to see Antonio after the

incident.   Id.   Morgan admitted that, at first, he told police that only two people were involved.

Id.   Then, Antonio told him that three were involved.   Id.   Morgan also admitted that he did not

see a white Charger parked across the street.   Id.

     Antoine testified that he talked to Antonio about the incident after it happened.   Id. at *4.

Antoine understood that Bohanna was trying to sell something, possibly drugs, to Antonio.   Id.

     The proof also showed that Antonio believed that the second man was around six feet

tall, and Bohanna was the third man.   Id.   Antonio claimed that he saw Bohanna flee in a white

Dodge Charger, the same car that Dowdy drove to the house two or three days earlier.   Id.

Antonio knew Dowdy because Dowdy had robbed Antonio a "long time ago."   Id.

     Antoine and Antonio testified at the preliminary hearing.   Id.   Before the hearing, Harris

offered Antoine money to not testify.   Id.   Antonio testified that he told Antoine that he was

positive Bohanna was involved in the crime, but Bohanna called Antonio and denied being

involved.   Id.   Antoine was present when his brother got the call from Bohanna.   Id.

     Bohanna's investigator testified that she interviewed[7] Antonio before his murder.   Id.

In the interview, Antonio said that he met Bohanna three or four days before the robbery, and

Bohanna was with Dowdy in a white Dodge Charger at that time.   Id.   Antonio also said that,

on the night of the robbery, Harris and another man came to his house and wanted to go to a

club.   Id.   Harris pulled out a gun and started shooting.   Id.   Bohanna then arrived armed with

a gun, and the three men fled in a white Dodge Charger.   Id.

     All four victims identified Harris as the gunman.   Id.   Antonio was the only person who

identified Bohanna as one of the perpetrators.   Id.   In a November 23, 2008 written statement,

---

[7] Her two-page summary was admitted into evidence.   Id.

Antonio also identified Bohanna and wrote on the photographic lineup that Bohanna was the man who pulled a gun and said, "sit down."   Id.   Antonio then identified Bohanna at the preliminary hearing, testifying that Bohanna was the man who said "get back in the room."   Id. Bohanna then had an outburst in the courtroom, and Antonio said that he was worried about retribution from Bohanna.   Id.

Ten of Bohanna's jailhouse telephone calls were entered into evidence.   Id. at *5–8. Bohanna argued that the calls could not be interpreted as instructions to kill Antonio or to influence witness testimony.   Id. at *8.   He admitted, during the calls and the hearing itself, that he attempted to change his appearance at the preliminary hearing by wearing glasses and changing his hair so he would not be identified.   Id. at *5–6, *8.

Petitioner's brother, Tony Bohanna[8], testified that he was the second person on several of the calls and that one of the calls was about a pistol that belonged to Trell Wright, which Tony threw away because it was junk.   Id. at *9.   Tony denied being part of a conversation where Bohanna told someone to "tell Trell to put that pistol on that boy", although Bohanna claimed to be talking to Tony at the time.   Id.

Donovan Hensley, a Jiffy Lube employee, testified that, in November 2008, Bohanna and another man brought a white Dodge Charger to the shop to install a water pump.   Id. at *8.[9] Bohanna acknowledged that he was in the car with Dowdy at Jiffy Lube and claimed that a crack user pawned the car to someone who let Dowdy use it.   Id.   Bohanna also testified that Dowdy was the perpetrator of the incident in question.   Id.   A robbery occurred at the Jiffy Lube in

---

[8] To avoid confusion, Tony Bohanna will be referred to as "Tony."

[9] Hensley later identified Bohanna during a photographic lineup and during the trial itself. Id.   He also testified that Bohanna was taller than six feet, one inch, and the record shows that Bohanna was six feet, three inches tall.   Id. at *18.

close proximity to when the Hawkins twins were robbed.   Id. at *13.   However, Hensley was prohibited from testifying about that robbery and could only testify about seeing Bohanna and another man bring a car in for service.   Id. at *13.

At trial, Bohanna presented an alibi that he was at a family gathering on the night of the incident and that he fell asleep on the floor after watching basketball.   Id. at *8.   Bohanna's sister-in-law, Robin Saine, corroborated the alibi and said that Bohanna was asleep on the floor when she went to bed at 12:30 a.m.   Id. at *9.   Other family members, including Bohanna's mother, confirmed Saine's recollection of the family gathering.   Id.

Other witnesses also testified.   For instance, Courtney Lurry, who is Harris's brother, and Tony testified about seeing Jacob Halliburton and Eric Walker at a basketball game that night in a white Dodge Charger.   Id.   Marilyn Harris, Harris's mother, testified that her son's friends drove a white Dodge Charger and that Bohanna was one of her son's friends.   Id. at *10. Myrico Carr testified that Walker was wearing Antoine Hawkins's watch.   Id. at *9.

However, as previously stated, on February 7, 2011, the jury convicted Bohanna on all but one charge.   (ECF No. 9-21 at PageID 2560–61; see ECF No. 9-1 at PageID 95.)

## C.  Bohanna's § 2254 Petition

On December 8, 2021, Bohanna filed his § 2254 Petition, alleging the following grounds for relief:

1. The evidence was insufficient to support his convictions (ECF No. 1 at PageID 5);

2. The trial court erred in admitting telephone calls, a hearsay statement of the victim, and Hensley's testimony (id. at PageID 7, 16);

3. The trial court erred in denying a mistrial (id. at PageID 8, 17–18);

4. The trial court abused its discretion when it ordered consecutive sentencing (id. at PageID 10); and

5.  He received Ineffective Assistance of Counsel (id. at PageID 11, 19–24).

Bohanna requests an evidentiary hearing, appointment of counsel, vacation of his

convictions and sentence, and a new trial.   (Id. at PageID 15.)   In response, Respondent argues

that Bohanna's claims are procedurally defaulted or meritless, and should be denied.   (ECF No.

14 at PageID 8110, 8137–69.)

## II.    ANALYSIS

### A.  Evidentiary Issues

First, Bohanna alleges that the evidence was insufficient to sustain his convictions (Claim

1) and that the trial court erred in admitting his jailhouse telephone calls, Antonio's hearsay

statement, and Hensley's testimony (Claim 2).   (ECF No. 1 at PageID 5, 7, 16.)   Each

evidentiary issue is addressed below.

### 1.  <u>Sufficiency of the Evidence</u>

To begin, Bohanna argues that the evidence is insufficient to support his

convictions.   (ECF No. 1 at PageID 5.)   He contends that "the only evidence of his guilt

that was properly admitted during trial was the preliminary hearing testimony of Antonio

Hawkins" and that Antonio's testimony "merely confirmed that the perpetrator was "a

guy resembling [Bohanna]."   (Id.)   Bohanna claims that, absent evidence admitted

pursuant to the forfeiture by wrongdoing exception, there is not sufficient evidence to

support a guilty verdict, especially in light of his alibi defense.   (Id.)   Respondent argues

that Bohanna's attempt to challenge the sufficiency of the evidence fails because the

proof was properly admitted and sufficient to show his guilt.   (See ECF No. 14 at

PageID 8143.)   Even without the proof Bohanna challenges as being inadmissible,

Respondent argues that the remaining proof was sufficient to support his convictions. (Id.)

In Jackson v. Virginia, 443 U.S. 307, 324 (1979), the Supreme Court held that, "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." In evaluating a Jackson claim, a federal court should review the record "in the light most favorable to the prosecution." Id. The Government is not required "to rule out every hypothesis except that of guilt beyond a reasonable doubt . . ." Id. at 326. "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. A challenge to the sufficiency of evidence addresses whether "the government's case was so lacking that it should not have even been submitted to the jury." Musacchio v. United States, 577 U.S. 237, 243 (2016) (internal quotation marks and citation omitted). "[A] reviewing court makes a limited inquiry tailored to ensure that a defendant receives the minimum that due process requires: a 'meaningful opportunity to defend' against the charge against [him] and a jury finding of guilt 'beyond a reasonable doubt.'" Id. (quoting Jackson, 443 U.S. at 314–15).

"[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam). "Jackson leaves juries broad discretion in deciding what inferences

12

to draw from the evidence presented at trial, requiring only that jurors must draw reasonable inferences from basic facts to ultimate facts." Coleman v. Johnson, 566 U.S. 650, 655 (2012) (per curiam) (quoting Jackson, 443 U.S. at 319) (internal quotation marks omitted). Credibility determinations are reserved for the trier of fact and are "generally beyond the scope of habeas review." Moreland v. Bradshaw, 699 F.3d 908, 918 (6th Cir. 2012) (internal quotation marks, citations, and alteration omitted).

Moreover, a petitioner raising a sufficiency of evidence claim "face[s] a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." Coleman, 566 U.S. at 651. First, on direct appeal, the reviewing court defers to the trier of fact, and, second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." Id. (internal quotation marks and citation omitted). The federal court assessing the habeas claim may overturn the state court's decision only if it was "objectively unreasonable." Id. (internal quotation marks and citation omitted).

Here, the TCCA addressed Bohanna's claim on direct appeal and denied relief. See Bohanna I, 2013 WL 2393050, at *16–18. The TCCA determined that Bohanna's arguments were based on factual issues involving the credibility of witnesses. Id. at * 18. The TCCA opined,

> We now review the evidence to determine whether a reasonable jury could find Appellant guilty of especially aggravated robbery, aggravated burglary, aggravated assault, reckless endangerment, and employing a firearm during the commission of a felony. Looking to the evidence in a light most favorable to the State, Appellant was identified numerous times at the preliminary hearing by Antonio Hawkins as one of three men who entered his home armed with a gun, without permission, and robbed and shot his brother, nearly killing him. A white Dodge Charger was seen parked

13

across the street from the home and was gone when the perpetrators left the scene. Appellant admitted that he drove a white Dodge Charger for a period of time several days prior to the offenses herein. Additionally, Mr. Hensley confirmed that Appellant and another man brought a white Dodge Charger to the Jiffy Lube in November of 2008. Finally, Mr. Morgan testified at trial that Appellant was taller than six feet, one inch. The record in this case established that Appellant was six feet, three inches tall. The jury heard and, based on their verdict, dismissed the alibi provided by Appellant. A decision within their purview. We conclude that the evidence was sufficient to support Appellant's convictions.

Id.

Where, as here, a state prisoner's claim has been adjudicated on the merits in state court, a federal court can issue a writ only if the adjudication:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). The petitioner carries the burden of proof for this "difficult to meet" and "highly deferential standard[.]" Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted).

First, a state court's decision is "contrary" to federal law when it "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or "decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412–13 (2000). "[A] run-of-the-mill state-court decision applying the correct legal rule . . . to the facts of a prisoner's case" does not "fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Id. at 406.

An "unreasonable application" of federal law occurs when the state court "identifies the correct governing legal principle from" the Supreme Court's decisions "but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. This application of federal law must be "objectively unreasonable" for the writ to issue. Id. at 409. It is not sufficient that the habeas court, in its independent judgment, determines that the state court decision applied clearly established federal law erroneously or incorrectly. Renico v. Lett, 559 U.S. 766, 773 (2010) (citing Williams, 529 U.S. at 411). Indeed,

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington v. Richter, 562 U.S. 86, 103 (2011).

Bohanna does not contend that the TCCA's decision was contrary to or an unreasonable application of Supreme Court precedent (like Jackson) or that it was based on an unreasonable determination of facts in light of the evidence presented in state court. However, if he did so argue, although the TCCA did not cite Jackson, it applied the correct legal rule from Tennessee cases that are part of Jackson's progeny. See Bohanna I, 2013 WL 2393050, at *17 (citing State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992)) ("The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt."). The TCCA's decision was not contrary to the Supreme Court's framework from Jackson.

As for whether the TCCA's decision was an unreasonable one, it appropriately

reviewed the elements of the crimes and the evidence presented at trial in the light most favorable to the state, finding no error in the trial court's admission of the challenged evidence.   Id. at *18.   The jury did not credit the testimony supporting Bohanna's purported alibi defense, as demonstrated by Bohanna's convictions.   The evidence, including (1) Antonio's statements, (2) testimony of victims Antoine, Morgan, and Reynolds, (3) Hensley's testimony, and (4) Bohanna's admission that he had been in the white Dodge Charger involved in the crime all support the jury's conclusion, as a rational trier of fact.   The TCCA's finding that the evidence was sufficient to sustain Bohanna's convictions was neither objectively unreasonable nor based on an unreasonable determination of facts in light of the evidence presented.

Claim 1 is without merit and is **DISMISSED**.

### 2. <u>Admission of Evidence</u>

Next, Bohanna argues that the trial court erred in admitting his jailhouse telephone calls, Antonio's hearsay statement, and Hensley's testimony.   (ECF No. 1 at PageID 7, 16.)   He contends that the jailhouse phone calls were incorrectly used to blame him for Antonio's unavailability under the forfeiture by wrongdoing exception (id. at PageID 7), and that he was unfairly prejudiced by the admission of Antonio's statement (id. at PageID 16).   Bohanna also contends that the trial court erred in admitting Hensley's testimony after the prosecutor's opening statement asserting that the white Dodge Charger Bohanna was seen driving was used at a robbery of a local Jiffy Lube near the robbery of the Hawkins twins.   (Id.)

Respondent argues that Bohanna's claims are procedurally defaulted because they were presented on direct appeal on state, not federal, law theories and Bohanna has

neither shown cause for the default nor resulting prejudice.   (ECF No. 14 at PageID
8145–46.)

A federal court may not grant a writ of habeas corpus on behalf of a state prisoner
unless, with certain exceptions, the prisoner has exhausted available state remedies by
presenting the same claim sought to be redressed in a federal habeas court to the state
courts pursuant to 28 U.S.C. §§ 2254(b) and (c).   Cullen, 563 U.S. at 181.   The
petitioner must "fairly present" each claim to each appropriate state court.   Baldwin v.
Reese, 541 U.S. 27, 29 (2004).   To fairly present a federal claim, a prisoner must present
the same facts and legal theory to the state courts as is raised in his federal habeas
petition.   See Hodges v. Colson, 727 F.3d 517, 529 (6th Cir. 2013) (internal quotation
marks, citation, and alteration omitted).   If a claim has never been presented to the state
courts but a state court remedy is no longer available (such as when an applicable statute
of limitations bars a claim), the claim is technically exhausted, but procedurally barred.
Coleman v. Thompson, 501 U.S. 722, 731–32 (1991).   To avoid procedural default, a
habeas petitioner in Tennessee must present his federal claims to the trial court and, on
appeal, to the TCCA.   Covington v. Mills, 110 F. App'x 663, 665 (6th Cir. 2004).

On direct appeal, Bohanna argued, based on the Tennessee Rules of Evidence,
that Antonio's statement was inadmissible hearsay and that forfeiture by wrongdoing
requires "an actual connection to the murder, **for which someone else has been charged,**
for the purpose of preventing the witness's testimony."   (ECF No. 10-16 at PageID
3201–07 (emphasis in original).)   Bohanna contends that he was denied the case file for
Antonio's murder and that, if the State had evidence of Bohanna's involvement, it would
have presented it.   (Id. at PageID 3205–06.)

17

The TCCA addressed this issued based on Tennessee Rule of Evidence 804(b)(6), the forfeiture by wrongdoing hearsay exception, and Tennessee precedent.   Bohanna I, 2013 WL 2393050, at *10–12.   The trial court (1) followed the procedure set forth in State v. Ivy, 188 S.W.3d 132 (Tenn. 2006), to apply the forfeiture by wrongdoing exception; (2) identified "numerous recorded conversations" where Bohanna wanted someone to encourage witnesses to change their testimony and prevent individuals, including Antonio, from testifying; and (3) determined that Bohanna used "potential bribery, coercion, getting people high, giving people money, having witnesses concoct stories."   Id. at *11.   Based on this assessment, the trial court found clear and convincing evidence that Bohanna "had something to do with Antonio's unavailability to testify at trial and that the probative value was outweighed by the potential prejudice" and, further, that it would be a "miscarriage of justice" to exclude Antonio's statement. Id.   On review, the TCCA determined that the trial court followed the proper procedure to determine if the exception applied and that the "evidence does not preponderate against [those] findings[.]"   Id. at *12.

Regarding the jailhouse telephone calls specifically, the trial court granted the State's motion to admit recordings of ten calls as admissions against penal interest and evidence of witness tampering, as well as to show guilty knowledge of the crime.   Id. On direct appeal, Bohanna argued, based on Tennessee Rule of Evidence 404(b), that the trial court erred in allowing admission of some of the jailhouse telephone calls "to 'show common or ongoing scheme or guilty knowledge' because the probative value of the telephone calls was outweighed by the danger of unfair prejudice and there was 'no clear connection between the conversations on the calls and the case at trial.'"   Id.   The

18

TCCA determined that the trial court did not abuse its discretion when analyzing

Bohanna's claim under Tennessee Rule of Evidence 404(b).   Id. at *13.

Next, as for Hensley's testimony, Bohanna argued on direct appeal that the trial

court erred by allowing admission of Hensley's identification of Bohanna as the driver of

the white Dodge Charger at Jiffy Lube.   (ECF No. 10-16 at PageID 3215–17.)   His

argument was based on Tennessee case law, the Tennessee Rules of Evidence, and

Federal Rules of Evidence.[10]   (Id. at PageID 3215.)   During opening statements, the

prosecution commented that Hensley would testify that Bohanna and another person

drove to the Jiffy Lube in a white Dodge Charger, asked about changing a water pump,

and then robbed the Jiffy Lube.   Id. at *13.   Bohanna objected to these statements and

asked for a mistrial.   Id.   The trial court issued two curative instructions and denied

Bohanna's request to strike Hensley as a witness, noting that Hensley would testify only

that Bohanna brought a white Dodge Charger in for service, and not about the robbery.

Id.   The TCCA determined that Hensley's testimony "was certainly relevant, as it

showed a connection between [Bohanna] and the white Dodge Charger used in the crime

that was unrelated to the incident itself" and that the trial court cured any prejudice by

issuing curative instructions to the jury.   Id.

The TCCA did not evaluate these allegations as federal constitutional claims.   A

federal court may entertain an application for a writ of habeas corpus on behalf of a state

prisoner "only on the ground that he is in custody in violation of the Constitution or laws

or treaties of the United States."   28 U.S.C. § 2254(a).   Given this standard, generally,

---

[10]  However, the Federal Rules of Evidence were not relied on in Bohanna's state
criminal case.

state evidentiary issues are not cognizable on federal habeas review.   See Estelle v.

McGuire, 502 U.S. 62, 67–68 (1991).   However, a federal court may grant relief where

the state's evidentiary ruling is so fundamentally unfair that it rises to the level of a due-

process violation.   Stewart v. Winn, 967 F.3d 534, 540 (6th Cir. 2020).   But, ordinarily,

"state-court evidentiary rulings cannot rise to the level of due process violations unless

they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our

people as to be ranked as fundamental.'"   Seymour v. Walker, 224 F.3d 542, 552 (6th

Cir. 2020) (quoting Montana v. Egelhoff, 518 U.S. 37, 43 (1996)).   Ultimately, states

have wide latitude as to evidentiary matters under the Due Process Clause.   See id.   To

succeed under § 2254(d)(1), a petitioner must identify a Supreme Court case that

addresses the "specific kind of evidence" challenged.   Stewart, 967 F.3d at 538 (internal

citation omitted).

        Here, Bohanna has not alleged a constitutional violation in his habeas petition

regarding these evidentiary issues.   Even if the Court were to construe his arguments as

due process claims, Bohanna did not exhaust the claims by fairly presenting them to the

TCCA, and he is barred from filing another post-conviction because of Tennessee's one-

year statute of limitations and the "one petition" rule.   Tenn. Code Ann. §§ 40-30-

102(a), (c).   Bohanna has neither argued cause and prejudice nor that there is a

miscarriage of justice here.

        Bohanna's claims that the trial court abused its discretion by allowing the

admission of the evidence listed in Claim 2 are not cognizable in a habeas proceeding

because they do not raise constitutional violations.   Moreover, to the extent Bohanna

intends to include constitutional violations as part of Claim 2, they are barred by

procedural default.    Therefore, Claim 2 is **DISMISSED**.

### B.  Mistrial

In Claim 3, Bohanna alleges that the trial court abused its discretion in denying a mistrial

based on: (1) a remark by a prospective juror evidencing "extreme racial discrimination"; (2) the

prosecution's opening statement about Bohanna's involvement in the Jiffy Lube robbery; and (3)

the dismissal of one Black juror for sleeping while keeping three white jurors who were also

sleeping.    (ECF No. 1 at PageID 8, 17–18.)

Respondent argues that Bohanna neither presents the federal basis for this claim nor

argues any Supreme Court case law.    (ECF No. 14 at PageID 8146.)    He contends that the

claim is procedurally defaulted because it was presented solely on a state law theory before the

TCCA and Bohanna has not alleged cause and prejudice to overcome the default.    (Id. at PageID

8146–47.)    Additionally, Respondent argues that the claim is without merit.    (Id. at PageID

8147–50.)    He asserts that the TCCA denied relief on the mistrial claim and that Bohanna has

offered no argument demonstrating how that decision was contrary to, or an unreasonable

application of, clearly established federal law.    (Id.)

Bohanna did not allege that the denial of a mistrial was a constitutional violation before

the TCCA.    (See ECF No. 10-16 at PageID 3210, 3212–15, 3217.)    The TCCA addressed

Bohanna's assertions and found that the trial court did not abuse its discretion in denying the

mistrial.    See Bohanna I, 2013 WL 2393050, at *14–16.

The decision to grant a mistrial is a matter of state law and is not cognizable on federal

habeas review.    See Barry v. Warren, No. 19-1855, 2019 WL 7834652, at *3 (6th Cir. Dec. 11,

2019) (citing Estelle, 502 U.S. at 67–68); Miller v. Hill, No. 1:22-CV-1758, 2023 WL 9100661,

at *13 (N.D. Ohio Nov. 22, 2023), report and recommendation adopted, No. 1:22 CV 1758, 2024

WL 51196 (N.D. Ohio Jan. 4, 2024) (noting that a trial court's discretionary decision is generally
a state-law issue that is not cognizable on federal habeas review unless the challenged decision
offended some principle so firmly rooted in the traditions and conscience of our system of justice
that its violation made the proceeding "fundamentally unfair").   Here, Bohanna has not clearly
alleged a constitutional violation regarding a denial of a mistrial.   Rather, he alleges only an
abuse of discretion, not that the denial of mistrial made his trial fundamentally unfair.

Bohanna's allegations of denial of mistrial (Claim 3) are not cognizable in this § 2254
Petition.   Therefore, Claim 3 is **DISMISSED**.

### C.  Sentencing

In Claim 4, Bohanna alleges that the trial court abused its discretion at sentencing.   (ECF
No. 1 at PageID 10.)   He asserts that, "by holding two (2) consecutive factors, the Trial Court
ordered all six (6) offenses to [be] serve[d] consecutively."   (Id.)   Bohanna contends that the
trial court should have ordered just one or two counts to be served consecutively, not all six.
(Id.)

Respondent argues that this claim is procedurally defaulted, that Bohanna raised the
claim based on state law before the TCCA, and that Bohanna does not indicate the federal basis
for this claim or present Supreme Court case law in support of his argument.   (ECF No. 14 at
PageID 8150–51.)

The TCCA reviewed Bohanna's sentence for abuse of discretion, considering Tenn. Code
Ann. § 40-35-115.   Bohanna I, 2013 WL 2393050, at *19–20.   It noted the trial court's
extensive findings that led to the application of consecutive sentencing, including that Bohanna
had: (1) never had a job; (2) a history of violent crime; (3) "no hesitation about engaging in
another crime where the threat of death was imminent"; (4) prior convictions for ten aggravated

robberies; and (5) a history of drug use and juvenile adjudications.   Id. at *20.   The TCCA

agreed that Bohanna was a dangerous offender with an "extensive criminal history and a

disregard for the law" sufficient to support the imposition of consecutive sentences.   Id. at *20–

21.

Bohanna raised this issue as a state law sentencing claim before the TCCA and argues the

same basis here.   He does not allege a constitutional violation.   A state court's alleged

misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern

only.   Howard v. White, 76 F. App'x 52, 53 (6th Cir. 2003) (internal citations omitted).

"[F]ederal habeas corpus relief does not lie for errors of state law."   Estelle, 502 U.S. at 67

(internal citation and quotation marks omitted).   Under 28 U.S.C. § 2254(a), Bohanna's state

law sentencing claim (Claim 4) is not cognizable on federal habeas review.   Therefore, Claim 4

is **DISMISSED**.

### D.  Ineffective Assistance of Counsel

In Claim 5, Bohanna alleges ineffective assistance of counsel for failure to investigate,

prevent the severance, and obtain the information about the investigation of Antonio's murder.

(ECF No. 1 at PageID 19–20.)   Respondent argues that these claims lack merit.   (ECF No. 14 at

PageID 8151–69.)

Under Strickland v. Washington, 466 U.S. 668, 687 (1984), a convicted defendant

alleging ineffective assistance of counsel must demonstrate that "counsel's performance was

deficient" and that "the deficient performance prejudiced the defense."   To establish deficient

performance, a defendant "must show that counsel's representation fell below an objective

standard of reasonableness."   Id. at 688.   A court considering a claim of ineffective assistance

must apply a "strong presumption" that counsel's representation was within the "wide range of

reasonable professional assistance." Id. at 689.  The challenger's burden is to show "that

counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

defendant by the Sixth Amendment." Id. at 687.  "The question is whether an attorney's

representation amounted to incompetence under 'prevailing professional norms,' not whether it

deviated from best practices or most common custom." Richter, 562 U.S. at 105 (quoting

Strickland, 466 U.S. at 690).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different."

Strickland, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine

confidence in the outcome." Id.  "It is not enough to show that the errors had some conceivable

effect on the outcome of the proceeding.  Counsel's errors must be so serious as to deprive the

defendant of a fair trial, a trial whose result is reliable." Richter, 562 U.S. at 104 (internal

quotation marks and citation omitted); see also id. at 111–12 (internal citations omitted) ("In

assessing prejudice under Strickland, the question is not whether a court can be certain counsel's

performance had no effect on the outcome or whether it is possible a reasonable doubt might

have been established if counsel acted differently. . . . The likelihood of a different result must be

substantial, not just conceivable."); Wong v. Belmontes, 558 U.S. 15, 27 (2009) (per curiam)

("But Strickland does not require the State to 'rule out' [a more favorable outcome] to prevail.

Rather, Strickland places the burden on the defendant, not the State, to show a 'reasonable

probability' that the result would have been different.").

The deference to be accorded a state-court decision under Strickland is magnified when

reviewing a claim of ineffective assistance of trial counsel under 28 U.S.C. § 2254(d).

Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all

24

the more difficult.   The standards created by <u>Strickland</u> and § 2254(d) are both "highly

deferential."   <u>Lindh v. Murphy</u>, 521 U.S. 320, 333 n.7 (1997).   When the two standards apply

in tandem, review is "doubly" so.   <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (internal

citation omitted).   The <u>Strickland</u> standard is a general one, so the range of reasonable

applications is substantial.   556 U.S. at 123.   Federal habeas courts must guard against the

danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).

"When § 2254(d) applies, the question is not whether counsel's actions were reasonable.   The

question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s

deferential standard."   <u>Richter</u>, 562 U.S. at 105 (parallel citations omitted).

Bohanna raised these claims before the TCCA on post-conviction appeal, which applied

the <u>Strickland</u> analysis to evaluate his claims.   <u>See</u> <u>Bohanna II</u>, 2021 WL 1698524, at *14–27.

His arguments regarding the investigation, severance, and the Antonio Hawkins murder

investigation are addressed below.

### 1.  <u>Investigation</u>

First, Bohanna alleges that his trial counsel failed to adequately investigate: (1)

Wright; (2) the connection of Lay and Townsend to Antonio's murder; and (3) the

recording of Bohanna's jail telephone calls to challenge Bohanna's involvement in

Antonio's murder.[11]   (ECF No. 1 at PageID 19.)   Bohanna asserts that the State had

information about the connection of Lay and Townsend to Antonio's murder.   (<u>Id.</u>)   He

acknowledges that his trial counsel requested this information and that the trial court

denied the request.   (<u>Id.</u>)   However, Bohanna asserts that his trial counsel "abandoned

---

[11]  Bohanna does not provide any further detail about his allegations that counsel was
ineffective in his handling of the jailhouse telephone calls.

any further challenge/investigation in violation of Petitioner's Sixth Amendment Right under the U.S. Constitution." (Id. at PageID 19–20.)   Bohanna contends that Wright knew the details of Antonio's death because of Wright's connections with Antonio's family, and that Bohanna's counsel was ineffective for failing to investigate that connection. (Id. at PageID 20.)

On post-conviction appeal, the TCCA noted that counsel only has "a duty to conduct a reasonable investigation or make a reasonable decision rendering a particular investigation unnecessary." Bohanna II, 2021 WL 1698524, at *21–22 (citing Strickland, 466 U.S. at 691).   It determined that, here, Bohanna's counsel requested the State's investigation file for the Antonio's murder, but the trial court denied the request, thus leaving trial counsel with no access to this information.

In addition, Bohanna did not present evidence at the post-conviction hearing "establishing what an investigation by trial counsel would have revealed independent of the State's investigation file." Id.   The TCCA stated that, as a general rule, when a petitioner contends that trial counsel failed to discover, interview or present witnesses, that petitioner must present the relevant evidence before the court at the post-conviction evidentiary hearing, which was not done here. Id. (citing Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990)).

Moreover, the TCCA noted that Bohanna's trial counsel continued to investigate Wright. Id. at *22.   During a jury-out hearing, Bohanna's counsel presented a deputy's testimony to discredit Wright's testimony about being housed with Bohanna when he learned of Antonio's murder. Id.   However, the trial court concluded that the State had sufficiently established forfeiture by wrongdoing. Id.   Further, the post-conviction court

26

found that Bohanna's testimony—that Wright knew about the murder because of his connection to Antonio's family—lacked credibility.  Id.   Therefore, the TCCA concluded that "[Bohanna] failed to present clear and convincing evidence that trial counsel was deficient in his investigation of Mr. Wright and the circumstances surrounding Mr. Antonio Hawkins's death."   Id.

On post-conviction appeal, Bohanna also maintained that "trial counsel was ineffective in failing to investigate and review with [Bohanna] all of the recordings of the hundreds of telephone calls that [Bohanna] made from jail."  Id.   The TCCA concluded that the record reflects that the prosecutor shared the call transcripts intended to be introduced at trial and that Bohanna acknowledged that his counsel reviewed the transcripts with him before then.  Id.   Moreover, counsel challenged the admission of the calls and the relevance.  Id.   Bohanna did not present evidence at the post-conviction hearing establishing what additional review or investigation into the calls would have revealed.  Id.   Based on counsel's actions and Bohanna's lack of proof at the post-conviction hearing, the TCCA determined that trial counsel was not deficient, and that Bohanna was not prejudiced.   Id.

In his habeas petition, Bohanna restates his arguments from state court.  (ECF No. 1 at PageID 7, 16.)   Respondent contends that Bohanna's ineffective assistance of counsel claim as to counsel's investigation is without merit, arguing that Bohanna's counsel investigated Wright after the forfeiture hearing and made every effort to discredit Wright's testimony about being housed with Bohanna.  (ECF No. 14 at PageID 8156–58.)   He also argues that counsel hired an investigator to look into every aspect of Bohanna's case and that this investigator worked over 330 hours on the matter.  (Id. at

PageID 8156–57.)   Respondent points out that Bohanna's trial counsel tried to obtain the murder file related to Antonio's death, but the trial court denied the request.   (Id. at PageID 8157.)   He notes that the post-conviction court determined that the murder investigation presented an issue of public safety and that the information sought would not have made a difference in the outcome of Bohanna's case.   (Id. (citing ECF No. 11-1 at PageID 3636).)   As for the jailhouse phone calls, Respondent asserts that Bohanna conceded that his trial counsel provided transcripts of the calls admitted at trial.   (ECF No. 14 at PageID 8157–58.)   Respondent asserts that the post-conviction court found that Bohanna's counsel was adequately prepared after reviewing the calls and that Bohanna was not prejudiced by "not having all 900 plus recordings of his jail phone calls."   (Id. at PageID 8158.)

The TCCA relied on and applied Strickland, see Bohanna II, 2021 WL 1698524, at *20–22, and Bohanna does not explain here how the court went awry (see ECF No. 1). He does not assert that the TCCA's ruling on the ineffective assistance claim as to counsel's investigation was contrary to or an unreasonable application of clearly established precedent.   Nor does he argue that the TCCA's analysis was based on an unreasonable determination of facts in light of the evidence presented.

The TCCA properly applied precedent in assessing these claims.   The evidence shows that: (1) the trial court denied Bohanna's counsel's request for Antonio's murder file; (2) counsel investigated Wright and sought to discredit his testimony; and (3) counsel reviewed the call transcripts with Bohanna and tried to show that the calls were taken out of context.   Moreover, Bohanna did not demonstrate prejudice from his counsel's alleged failure to investigate.   Bohanna II, 2021 WL 1698524, at *6, 20–22.

Bohanna has not met his burden to show that the TCCA's decision regarding the investigation was unreasonable and that he is entitled to habeas relief.

### 2. <u>Severance</u>

As for Bohanna's argument regarding inefficient assistance of counsel as it relates to severance, he alleges that Harris was "in position to testify favorably" for Bohanna at trial. (ECF No. 1 at PageID 20.) Bohanna asserts that the prosecution threatened Harris's mother and that Harris's counsel filed a motion for severance, which the trial court granted. (<u>Id.</u> at PageID 20–21.) He argues that his trial counsel was ineffective for failing to raise the severance issue on a motion for new trial as prosecutorial misconduct, threatening a witness, and/or the trial court's error in violation of fundamental fairness. (<u>Id.</u> at PageID 21.) According to Bohanna, had Harris testified at trial in Bohanna's favor, the "outcome, more than likely would have been different in [Bohanna's] favor." (<u>Id.</u>) Had his trial counsel made those different decisions, Bohanna argues that he would have been granted relief on appeal. (<u>Id.</u>) Respondent argues that Bohanna's challenge is "meritless." (ECF No. 14 at PageID 8158–60.)

Bohanna's ineffective assistance claim as to severance was raised on post-conviction appeal. (ECF No. 11-34 at PageID 7981–85.) Although the TCCA noted that Bohanna did not raise this issue on direct appeal, it also pointed out that Bohanna alleged that his trial counsel was ineffective for not raising the issue in a motion for new trial, which prevented the severance issue from being raised on direct appeal and so addressed the issue. <u>Bohanna II</u>, 2021 WL 1698524, at *22. Harris requested severance based on Bohanna's statements in phone recordings that (1) he planned to contact Harris to persuade him to testify favorably for Bohanna; (2) the statements could

be interpreted as threats toward Harris's mother; and (3) Bohanna intended to pay a portion of Harris's legal fees in exchange for Harris's favorable testimony.  Id.  The TCCA determined that severance was appropriate under Tennessee Rule of Criminal Procedure 14(c)(1) as there were out-of-court statements that referenced Harris, but were not admissible against him.  Id.  Additionally, as the TCCA noted, Bohanna had not shown that Harris was not entitled to severance.  Id. at *23.  Rather, Bohanna argued only that severance was prejudicial because Harris would have testified favorably for Bohanna at a joint trial.  Id.

The TCCA found that the trial court acted within its discretion in severing the trial based on Bohanna's misconduct which, in a joint trial, would have affected Harris's credibility, but was inadmissible against Harris in a separate trial.  Id.  Because the TCCA found severance appropriate, it determined that Bohanna's counsel was not ineffective for failure to raise this issue in a motion for new trial.  Id.  The TCCA noted the post-conviction court's finding that "both Mr. Harris and his counsel maintained that Mr. Harris would assert his right against self-incrimination if called to testify at [Bohanna's] trial."  Id.  Although Harris testified at the post-conviction hearing, he did not say that he would have testified at Bohanna's trial.  Id.

The TCCA, citing Strickland, found that trial counsel's performance was not deficient when he did not challenge that trial court's discretionary and appropriate decision to sever the trial because statements made in the phone recordings would not have been admissible against Harris in a separate trial but would have challenged his credibility in a joint trial.  The TCCA pointed out that, although Bohanna asserts that he was prejudiced because Harris would have testified for him at the joint trial, Bohanna

failed to present evidence that this was true.   Harris and his counsel had informed the

trial court that Harris intended to invoke his Fifth Amendment right if called as a witness,

such that Bohanna has not shown that he was prejudiced.   The TCCA's decision was not

contrary to or an unreasonable application of Strickland and is based on a reasonable

determination of facts in light of the evidence presented.

### 3. **Murder Investigation into Antonio's Death**

Bohanna contends that his trial counsel was ineffective for failing to argue that

the State's refusal to disclose the Antonio murder file was a Brady violation.   (ECF No.

1 at PageID 22.)   He argues that the information showed that Antonio was killed because

of his relationship with Knight, not to keep him from testifying at Bohanna's trial.   (Id.)

Bohanna asserts that the trial court's and the prosecution's theory of Bohanna's criminal

responsibility is incorrect and that the hearsay exception for forfeiture by wrongdoing did

not apply, making the admission of the phone recordings improper.   (Id.)   According to

Bohanna, "[h]ad the information [been] disclosed, the Court outcome, more than likely,

would have been different in Petitioner's favor, because Petitioner had nothing to do with

the unavailability of Antonio. . . ."   (Id. at PageID 22–23.)

Respondent argues that the TCCA's decision on this issue was not contrary to or

an unreasonable application of clearly established federal law.   (ECF No. 14 at PageID

8167–69.)   He contends that trial counsel had no basis to raise a Brady claim and,

therefore, counsel cannot be considered deficient when the claim would be based on

"mere speculation."   (Id. at PageID 8167.)   In addition, Respondent states that Bohanna

failed to establish prejudice from the withheld evidence because the statements in the file

"were neither favorable nor material" and "merely provided another theory for the motive

and person responsible for Antonio Hawkins's murder."   (Id. at PageID 8167–68.)

Respondent argues that there is not a reasonable probability, even if Bohanna had

obtained the statements from the murder file, that it would have affected the jury's

determination of Bohanna's guilt concerning the robbery and shooting of Antoine, as the

evidence in the murder file was neither exculpatory as to these changes nor of use in

impeaching a trial witness.   (Id. at PageID 8168–69.)

     Under Brady, the prosecution must turn over to the defense all exculpatory

evidence.   373 U.S. at 87.   Bohanna raised this same claim on post-conviction appeal.

Bohanna II, 2021 WL 1698524, at *23.   There, the TCCA noted that Bohanna's trial

counsel requested the information as Jencks material before trial, and, on direct appeal,

Bohanna argued that the murder file was withheld in violation of Brady.   Id. (citing

Bohanna I, 2013 WL 2393050, at *12).   However, the TCCA also noted that "it does not

appear that trial counsel had the information with which to properly raise a Brady claim

in a motion for new trial or on direct appeal."   Id.   The State had not disclosed the

results of the homicide investigation, and Bohanna's counsel had no basis to assert that

the information in the investigation was exculpatory.   Id.   The TCCA opined,

> We observe that the Petitioner asserts not only that his due process rights
> were violated by the failure to disclose the results of the investigation but
> also that trial counsel was ineffective for failing to properly raise or preserve
> the issue.   We conclude that, because the Petitioner cannot establish the
> materiality of the evidence, he would not be entitled to relief under either
> analysis.

Id.

     The TCCA addressed the prosecution's duty to disclose information and the

argument and evidence presented in support of admission of the jailhouse phone calls

under the forfeiture by wrongdoing exception to the hearsay rule.   Id. at *24–25.   The

32

court stated that, for the exception to the apply, "the State was required to establish by a preponderance of evidence that [Bohanna] was involved in or was responsible for Mr. Antonio Hawkins's death and that [Bohanna's] actions were intended, in part, to procure Mr. Antonio Hawkins's absence from trial." Id. at *25.   Before the forfeiture by wrongdoing hearing and trial itself, the State had various witnesses' statements, Lay's indictment for the first-degree premeditated murder of Antonio, and Townsend's blood at the scene.   Id.   The TCCA noted that, although Bohanna urged the court to consider the transcript of Townsend's guilty plea, Townsend was not indicted until after Bohanna's trial, so his guilty plea was not available to the trial court.   Id.   The TCCA determined that the information that was available before Bohanna's trial was that Lay and Townsend shot Antonio because of his relationship with Lay's girlfriend and that information was favorable to Bohanna.   Id.

The TCCA acknowledged that the prosecutor was unable to connect the individuals named in the Hawkins murder investigation with Bohanna.   Id.   But, because the prosecutor made the decision to introduce Antonio's statements under the forfeiture by wrongdoing exception by claiming that Bohanna was involved in or responsible for the murder, the prosecutor was required to disclose any favorable evidence that Bohanna could have used to challenge the application of that exception. Id.   However, the TCCA also determined that there was no evidence introduced at the post-conviction hearing which established that trial counsel "possessed or was able to obtain the information set forth in witnesses' statement that were in the State's exclusive control."   Id.

In addressing the materiality of the unavailable evidence, the TCCA noted that the trial court admitted Antonio's preliminary hearing testimony as former testimony of an unavailable witness under Tennessee Rule of Evidence of 804(b)(1), a ruling that has nothing to do with why Antonio was unavailable.  Id. at *26.  Antonio testified under oath at the preliminary hearing, identifying Bohanna as the person who pointed a gun at him, and describing the robbery and shooting of his brother, consistent with the statements and trial testimony of other witnesses.  Id.  Given the strength of this evidence and the fact that its admission had nothing to do with the alleged Brady material, the TCCA concluded that "the evidence from the investigation of the homicide was not material in that the evidence would not have cast 'the whole case in such a different light as to undermine confidence in the verdict.'"  Id.  As such, the TCCA determined that Bohanna was unable to establish Brady as a stand-alone claim, and, likewise, Bohanna was unable to establish that his trial counsel was ineffective for failing to raise a Brady claim in the motion for new trial.  Id.  To the extent that Bohanna raised a similar claim that his trial counsel was ineffective for failing to object to the State's nondisclosure of evidence under Giglio v. United States, 450 U.S. 150 (1972), and for failing to raise the issue in the motion for new trial, the TCCA determined that the claim was waived based on Bohanna's failure to provide any argument or cite to any authority to support his claim.  Bohanna II, 2021 WL 1698524, at *26.

Bohanna has not established that the TCCA's decision was contrary to or an unreasonable application of Strickland.  Therefore, Bohanna's ineffective assistance claim (Claim 5) is without merit and **DISMISSED**.

34

III.    **CONCLUSION**

Because every claim asserted by Bohanna is without merit, not cognizable in habeas, and/or procedurally defaulted, the Court **DENIES** the § 2254 Petition.   The § 2254 Petition is **DISMISSED WITH PREJUDICE**.   Judgment shall be entered for Respondent.

IV.    **APPEAL ISSUES**

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2254 petition and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2); see also Fed. R. App. P. 22(b).   The COA must indicate the specific issue or issues that satisfy the required showing.   28 U.S.C. §§ 2253(c)(2)-(3).   No § 2254 petitioner may appeal without this certificate.   28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."   Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (internal quotation marks and citation omitted).

"In short, a court should not grant a certificate without some substantial reason to think that the denial of relief might be incorrect."   Moody v. United States, 958 F.3d 485, 488 (6th Cir. 2020).   "To put it simply, a claim does not merit a certificate unless every independent reason to deny the claim is reasonably debatable."   Id. (emphasis in original); see also id. (emphasis in original) ("Again, a certificate is improper if any outcome-determinative issue is not reasonably debatable.").

In this case, there can be no question that the claims in the § 2254 Petition are meritless, non-cognizable, or procedurally defaulted for the reasons previously stated. Because any appeal by Petitioner on the issues raised in his § 2254 Petition does not deserve attention, the Court **DENIES** a certificate of appealability.

Rule 24(a)(1) of the Federal Rules of Appellate Procedure provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. However, if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the prisoner must file his motion to proceed in forma pauperis in the appellate court. See Fed. R. App. P. 24(a)(4)-(5). In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore **CERTIFIED**, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal in forma pauperis is **DENIED**.[12]

      **IT IS SO ORDERED**, this 14th day of March, 2025.

                        s/ Sheryl H. Lipman
                        SHERYL H. LIPMAN
                        CHIEF UNITED STATES DISTRICT JUDGE

---

[12] If Petitioner files a notice of appeal, he must pay the full $605 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days of the date of entry of this order. See Fed. R. App. P. 24(a)(5).